UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ARTHUR LOUIS SMITH,

                Petitioner,

v.                                        CASE NO. 05-CV-71342-DT
                                        HONORABLE GEORGE CARAM STEEH

CINDY CURTIN,

                Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Arthur Louis Smith has filed an application for the writ of habeas corpus under 28 U.S.C. §2254. The habeas petition challenges Petitioner's state convictions for assault with intent to commit murder and two weapon offenses. Petitioner alleges that his constitutional rights were violated by a suggestive pretrial identification, insufficient evidence, prosecutorial misconduct, and an incomplete jury instruction on identification. Because these claims lack merit, the habeas petition must be denied.

**I. Background**

Petitioner was charged in Macomb County, Michigan with assault with intent to commit murder, MICH. COMP. LAWS § 750.83, carrying a concealed weapon (CCW), MICH. COMP. LAWS § 750.227, and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. The charges arose from a drive-by shooting at 225 Howard Street in Mount Clemens, Michigan on June 29, 2002.

> Tyrone Horton testified that he had been sitting on the curb, waiting for his wife to pick him up, when he heard gun shots and saw others running. He got up and was shot in the back as he tried to run. Vincent Durr was an eyewitness who

provided the police with a description of the shooter, and identified [Petitioner] in a photographic lineup.

*People v. Smith*, No. 247826, at 1 (Mich. Ct. App. July 15, 2004).

Vincent Durr's testimony at trial was the primary evidence against Petitioner. The victim, Tyrone Horton, was unable to identify the shooter, and there was no physical evidence connecting Petitioner to the crime. Petitioner did not testify, but he presented three witnesses (his girlfriend, his girlfriend's brother, and his cousin) who claimed that he was watching fireworks with them in the parking lot of his cousin's apartment building at the time of the shooting.

On February 21, 2003, a Macomb County Circuit Court jury found Petitioner guilty as charged. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of twenty to forty years for the assault and two to five years for CCW. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished decision, *see id.*, and on January 31, 2005, the Michigan Supreme Court denied leave to appeal. *See People v. Smith*, 472 Mich. 861; 692 N.W.2d 386 (2005) (table).

Petitioner filed his habeas corpus petition on April 7, 2005. The grounds for relief read:

I.    Defendant's suggestive photographic pretrial identification violated his right to due process under the United States and Michigan Constitutions and the trial court's failure to grant his motion to suppress was clear error. The subsequent in-court identification was the fruit of the poisonous tree, and the product of a suggestive identification confrontation at preliminary examination and trial devoid of a sufficient independent basis.

II.   The prosecutor failed to present sufficient evidence to sustain a finding of guilt beyond a reasonable doubt of assault with intent to commit murder, felony-firearm, and CCW in an automobile.

      A.    The jury verdict of guilty of assault with intent to

commit murder, felony-firearm, and CCW in an automobile were legally infirm, where defendant established the defense of alibi and the prosecution failed to rebut his alibi evidence.

III.    Defendant was denied his right to a fair trial under the Michigan and federal constitutions by the intentional prosecutorial misconduct in his improper and highly prejudicial argument to the jury when he: vouched for credibility of his witnesses, bolstered the validity of his case, denigrated the defendant, his defense, and defense witnesses, and shifted the burden of proof to defendant.

IV.    The trial court committed reversible error where it failed to completely read defendant's requested instruction on identification CJI2d 7.8 that embodied his theory of the case and was necessary for the jury to properly understand his defense and was not covered by any other jury instructions.

Respondent Cindy Curtin has filed an answer to the habeas petition in which she urges the Court through counsel to deny the petition. Respondent argues that (1) the state court's decision on Petitioner's first claim was objectively reasonable, (2) the evidence was sufficient to sustain the jury's verdict, (3) Petitioner's prosecutorial-misconduct claim is barred by Petitioner's failure to object at trial, and (4) the challenge to the jury instructions is not cognizable on habeas review.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

## III. Discussion

### A. The Pretrial Photographic Identification

Petitioner alleges that Vincent Durr's in-court identification of him was the product of a suggestive pretrial photographic array, which included his photograph. Petitioner contends that the trial court should have suppressed Mr. Durr's in-court identification and that the failure to do so violated his constitutional right to due process.

The trial court held an evidentiary hearing on this claim and concluded that the pretrial identification procedures were not suggestive. The Michigan Court of Appeals agreed and concluded that the trial court did not err in refusing to suppress the in-court identification.

#### 1. Legal Framework

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). When determining whether a suggestive identification procedure violated a defendant's right to due process, courts must conduct a two-step inquiry. *Haliym v. Mitchell*, __ F.3d __, __, No. 04-3207, 2007 WL 2011268, at *18 (6th Cir. July 13, 2007) (citing *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1032 (2006)). "First, [courts] assess whether the identification was unnecessarily suggestive. If so, [courts] then consider whether the evidence was nevertheless reliable despite the impermissible suggestiveness of the identification procedure." *Id*. (citations omitted).

Courts look to the following factors when determining whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). The age of the eyewitness, "like any factor that affects the ability of the witness to record and recount information accurately," is also relevant when determining the reliability of eyewitness identification. *Haliym,* 2007 WL 2011268, at *20. "If the defendant fails to show that the procedure was impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, admission of the identification testimony does not violate the defendant's right to due process." *United States*

*v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004).

## 2. Application

Vincent Durr described the shooter to the police as a black, heavy-set man with light

skin, a nappy wild hairstyle, Afro, a little facial hair, and a big nose. (Tr. Feb. 19, 2003, at 106;

Tr. Feb. 20, 2003, morning session, at 25.) Mr. Durr subsequently viewed a photographic array

that contained six photographs, including Petitioner's. Mr. Durr and the officer who prepared

the photographic array testified at a pretrial hearing that Petitioner had the lightest skin coloring

of the six men in the photographic display. (Tr. Jan. 31, 2003, at 44; Tr. Feb. 13, 2003, at 14.)

However, one other man in the array had light-colored skin (Tr. Jan. 31, 2003, at 18-19 and 35;

Tr. Feb. 13, 2003, at 14) and fit the description given by Mr. Durr (Feb. 13, 2003, at 20.) All the

men in the array appear to have been African Americans, and they all had facial hair. *See* Pet.

for Writ of Habeas Corpus, App. A.

The detectives who showed the photographic array to Mr. Durr did not suggest that the

shooter's photograph was included in the display or that Mr. Durr was required to make an

identification. In fact, one of the detectives read the following paragraph to Mr. Durr before

showing him the photographs.

> You will be asked to look at a group of photographs. The fact that the
> photographs are shown to you should not influence your judgment. You should
> not conclude or guess that the photographs contain the picture of the person who
> committed the crime. You are not obligated to identify anyone. It is just as
> important to free innocent persons from suspicion as to identify guilty parties.

(Tr. Jan. 31, 2003, at 9-10.)

To summarize, no suggestive comments were made about the array. In addition,

Petitioner did not look substantially different from the other men in the array, and his skin tone

was very similar to one other man in the array. The Court therefore agrees with the state courts that the photographic array was not suggestive. Even if the photographic array were deemed suggestive, the Court believes for the following reasons that Mr. Durr's identification of Petitioner was reliable.

### a. Opportunity to View the Defendant and Degree of Attention

Mr. Durr was forty-five years of age at trial. He estimated that he saw the shooter from ten, twenty, or perhaps fifty feet away. The shooter was seated in the front of the car on the passenger side. The car drove slowly by the house and garage where Durr was standing. Although it was nighttime, there was a street light nearby and a porch light was on. Durr testified that the car could not have been going more than five miles per hour at the time and that he could see part of the shooter's face and hair. (Tr. Feb. 19, 2003, at 84-91 and 117-19.) He saw the shooter for about three seconds before the shooting started and he ran for cover.

Three seconds is a short amount of time, but Durr testified that it was enough time to glance and see the shooter. He noticed that the shooter's weapon was a handgun, as opposed to a rifle or shotgun, but he was unable to describe the color of the gun or say whether the gun was an automatic or a revolver. (*Id*. at 86-91, 97-98, 115-16.) However, he was wearing glasses, which corrected his vision to normal, and he had not been drinking alcoholic beverages or using controlled substances that night. He did not know the shooter, but he was able to provide details about the shooter's appearance, the car in which the shooter was seated, and the number of men in the car. Of particular significance is the fact that Durr was concerned for his own safety (*id*. at 90-91), a factor that suggests a heightened degree of attention. *Haliym*, 2007 WL 2011268, at *19.

### b. Accuracy of the Description

Petitioner wore his hair in braids at trial, and his alibi witnesses claimed that he was wearing his hair in braids on the night of the shooting. Although Mr. Durr described the shooter as having wild, nappy hair or an Afro, Petitioner could have changed his hair style by the time of his trial, and there was no dispute that, other than his hair style, Petitioner fit the description given of the shooter.

### c. Certainty of the Description and Length of Time

The officers who administered the photographic show-up testified that Mr. Durr immediately identified Petitioner in the array. According to them, Mr. Durr said he recognized the man even though he (Durr) was not wearing his glasses. (Tr. Jan. 31, 2003, at 10, 20, 33-34; Tr. Feb. 20, 2003, morning session, at 20.) Mr. Durr also was certain at trial that Petitioner was the shooter. (Tr. Feb. 19, 2003, at 95-96.) He maintained that it was not possible that he identified the wrong man. (*Id*. at116.)

The length of time between the initial observation and the photographic showing was about one month, which was not unduly long. Even longer periods of time have been found to be reliable. *See United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987) (citing cases upholding five- and nine-month delays and stating that "[a] three to four-month delay between the crime and the identification does not render the identification inherently unreliable").

To summarize, Vincent Durr's opportunity to view the shooter was fair, given the short amount of time that he viewed the shooter's face and the distance from which he saw him. However, his degree of attention was heightened, and his pretrial description of the shooter matched Petitioner with the exception of Petitioner's hairstyle, which could have been altered

between the initial confrontation and trial. Mr. Durr was certain of his pretrial identification, and the length of time between his initial observation and the pretrial identification was not long.

Overall, the Court believes that the factors weigh in favor of reliability of the identification. The state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### B. Sufficiency of the Evidence

Petitioner alleges that the prosecutor failed to present sufficient evidence to sustain his convictions. Specifically, Petitioner contends that the prosecution failed to establish that he possessed a specific intent to kill Tyrone Horton. Petitioner further alleges that the prosecution failed to rebut his alibi defense and did not demonstrate that the facts would sustain a murder conviction if Horton had died. The Michigan Court of Appeals concluded that there was sufficient evidence to establish that Petitioner intended to kill someone. The court of appeals stated that Petitioner's argument about his other convictions failed because the jury apparently found Durr credible and Petitioner's witnesses not credible.

### 1. *Jackson v. Virginia*

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

## 2. Application

In Michigan, "[t]he elements of assault with intent to murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Barclay,* 208 Mich. App. 670, 674; 528 N.W.2d 842, 844 (1995). The elements in dispute here are "actual intent to kill" and "if successful, would make the killing murder."[1]

Petitioner claims that there was no evidence of an intent to kill and that he could easily have killed someone if he had intended to do so. There was no evidence suggesting a motive for the shooting. The testimony, however, established that there were eight to twelve people in the area of 225 Howard Street when a car drove by. The car slowed down as it got in front of the Howard Street address where Vincent Durr and other people had congregated and where Tyrone Horton was seated on the curb. Then a man stuck a handgun out the window of the car and fired the gun at least seven times. The gunfire prompted Tyrone Horton and other people to run. Horton was hit in the back. Although the gun used in the shooting was not recovered, prosecution witnesses testified that the casings and bullet fragments found at the crime scene

---

[1] Petitioner does not contest the assault element, which requires showing "an attempt or offer with force and violence to do corporal hurt to another." *People v. Bailey*, 451 Mich. 657, 668-69; 549 N.W.2d 325, 331 (1996) (quoting *People v. Smith*, 217 Mich. 669, 673; 187 N.W. 304 (1922)).

were compatible with a .45 (high) caliber gun.

A rational juror could have concluded that the shooter intended to kill someone, because he repeated fired a high caliber gun in the location of the victim. A rational juror also could have concluded that Petitioner would have been guilty of second-degree murder if Mr. Horton had died. The necessary state of mind for second-degree murder is malice, which is the intent to kill, the intent to do great bodily harm, or the intent to commit an act in wanton and wilful disregard of the likelihood that death or great bodily harm will occur. *People v. Aldrich*, 246 Mich. App. 101, 123; 631 N.W.2d 67, 69-80 (2001). Malice can be inferred from the use of a deadly weapon. *See People v. Carines*, 460 Mich. 750, 760; 597 N.W.2d 130, 136 (1999). At a minimum, the jury could have inferred that Petitioner acted in wanton and wilful disregard of his actions when he fired a gun in the vicinity of Tyrone Horton.

### 3. Failure to Disprove the Alibi Defense

As to all three offenses, Petitioner alleges that the prosecution failed to disprove his alibi defense, as required by *People v. Owens*, 3 Mich. App. 707, 712; 143 N.W.2d 574, 577 (1966). Petitioner presented three alibi witnesses, who were related to him or were his friends. The alibi witnesses testified that Petitioner was socializing at his cousin's apartment in Clinton Township when the shooting in Mount Clemens occurred. While this evidence contradicted Vincent Durr's testimony that Petitioner was the shooter,

> [a] reviewing court does not reweigh the evidence or redetermine the credibility
> of the witnesses whose demeanor has been observed by the trial court. *Marshall
> v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the
> province of the factfinder to weigh the probative value of the evidence and
> resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.
> 1992). An assessment of the credibility of witnesses is generally beyond the
> scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,*
> 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to

convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003); *accord Caldwell v. Russell*, 181 F.3d 731, 738 n.6 (6th Cir. 1999) (stating that, "[o]n collateral review . . . , the court must defer to a jury's credibility determinations and resolutions of conflicts in testimony, weight accorded to evidence, and reasonable inferences drawn from the basic facts to reach ultimate factual conclusions"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000); *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985) (explaining that reviewing courts must "draw all available inferences, and resolve all issues of credibility, in favor of the jury's verdict"). Furthermore, a detective acquired information that Petitioner may have been involved in the shooting,[2] and the testimony of one eyewitness is sufficient evidence to establish the identity of the perpetrator of a crime, *United States v. Levi*, 405 F.2d 380 (4th Cir. 1968), even when the eyewitness's testimony is contested, *Morris v. California*, 36 Fed. Appx. 235, 238 (9th Cir. 2002) (citing *United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir. 1977)).

### 4. Summary

A rational juror who viewed the evidence in the light most favorable to the prosecution could have concluded that Petitioner shot the victim with an intent to kill him and that Petitioner's alibi defense was not credible. Therefore, the state court's decision that the evidence was sufficient to support Petitioner's convictions was not contrary to, or an unreasonable

---

[2] The detective started to say, "The day after the shooting there was an anonymous tip given that Arthur Smith was the one -- " Defense counsel interrupted the detective and objected on the ground that the testimony was hearsay. The trial court sustained the objection and instructed the jury to disregard the comment. The detective subsequently testified that he was given some indication that Petitioner may have been involved in the shooting. (Tr. Feb, 20, 2003, morning session, at 56-57 and 59.)

application of, *Jackson v. Virginia.*

**C.  The Prosecutor's Conduct**

Petitioner alleges next that the prosecutor deprived him of his constitutional right to a fair trial during closing arguments.  Petitioner contends that the prosecutor vouched for the credibility of his witnesses, bolstered the validity of his case, denigrated the defense and the defense team, and shifted the burden of proof to Petitioner.

Respondent argues that this claim is procedurally defaulted.  The Court agrees.  A procedural default is "a critical failure to comply with state procedural law. . . ."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Federal habeas courts may not consider a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**1.  Violation of a State Procedural Rule**

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make a timely and specific objection at trial in order to preserve a claim for appellate review.  *See Carines*, 460 Mich. at 761-65; 597 N.W.2d at 137-39; *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).  "[T]he contemporaneous-objection rule has been lauded as few other procedural requirements have been."  *Scott v. Mitchell*, 209 F.3d 854, 870 (6th Cir. 2000).  Petitioner violated the rule by not objecting during trial to the prosecutor's closing argument.

The Michigan Court of Appeals enforced the contemporaneous-objection rule by stating

that Petitioner failed to object to the complained-of statements and, therefore, it was required to review Petitioner's claim for plain error affecting substantial rights. A state appellate court's review for plain error constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

The contemporaneous-objection rule was an adequate and independent state ground for denying relief because Petitioner could have been apprised of the rule's existence at the time of the actions giving rise to the procedural default. *Cone v. Bell*, __ F.3d __, __, No. 99-5279, 2007 WL 1745294, at *9 (6th Cir. June 19, 2007). The rule was firmly established and regularly followed before Petitioner's trial. Therefore, in order for this court to consider the substantive merits of Petitioner's procedurally defaulted claim, he must establish "cause and prejudice" or a "miscarriage of justice."

Petitioner has not offered any argument in support of a finding of "cause and prejudice." The Court therefore deems the "cause and prejudice" argument abandoned. *Roberts v. Carter*, 337 F.3d 609, 613 (6th Cir. 2003).

### 2. Miscarriage of Justice

Petitioner may overcome his procedural default in the absence of "cause and prejudice," on a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). This narrow exception for fundamental miscarriages of justice requires the habeas applicant to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v Carrier*, 477 U.S. 488, 496 (1986). "To establish the requisite probability, the

14

petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup*, 513 U.S. at 327.

Although Petitioner challenges the sufficiency of the evidence, he has not submitted any new and credible evidence from which a reasonable juror could have concluded that he was not guilty of the offenses for which he was convicted. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's prosecutorial-misconduct claim. The claim is procedurally defaulted.

### D.  The Jury Instructions

Petitioner's fourth and final claim alleges that the trial court committed reversible error when it failed to read the entire standard jury instruction on identification. Petitioner claims that the omitted paragraph of the standard instruction embodied his theory of the case and was necessary for the jury to properly understand his defense. He also claims that the omitted paragraph was not covered by the other jury instructions.

The Michigan Court of Appeals adjudicated this claim on the merits and concluded that, although Vincent Durr's earlier descriptions of the shooter were not all consistent, any error in failing to give the requested instruction was harmless in light of the testimony, the arguments, and the portion of the instruction that was read to the jury. The court of appeals noted that the jury "was fully aware of the fact that Durr was the only identification witness, with the strengths and weaknesses in his testimony, and with the need to evaluate the identification testimony carefully." *Smith*, Mich. Ct. No. 247826, at 5.

### 1.  The Right to a Jury Instruction on the Defense Theory

The question on habeas review of a jury instruction is not whether the instruction was

"undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the instruction must have violated a "right which was guaranteed to the defendant by the Fourteenth Amendment" or the instruction must have "so infected the entire trial that the resulting conviction violates due process." *Id.* at 146-47.

The constitutional right in question here is the right to defend. Defendants in criminal cases must "be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002). "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. " *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)).

### 2. Application

The standard criminal jury instruction in question reads:

(1) One of the issues in this case is the identification of the defendant as the person who committed the crime. The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the defendant was the person who committed it.

(2) In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well-lighted, and the witness's state of mind at that time.

(3 ) Also, think about the circumstances at the time of the identification, such as how much time had passed since the crime, how sure the witness was about the identification, and the witness's state of mind during the identification.

[(4) You may also consider any times that the witness failed to identify the defendant, or made an identification or gave a description that did not agree with (his / her) identification of the defendant during trial.]

(5) You should examine the witness's identification testimony carefully. You may consider whether other evidence supports the identification, because then it may be more reliable.  However, you may use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime.

CJI2d 7.8.

The trial court read paragraphs 1, 2, 3, and 5 of this jury instruction to the jury, but it omitted optional paragraph 4 of the instruction.[3]  When defense counsel objected to the omission of paragraph 4, the trial court stated that the paragraph did not apply because the eye witness neither failed to make an identification nor failed to give a description that did not agree.

Petitioner says that the record is replete with varying and conflicting descriptions of him. The Court disagrees.  During an investigative interview nineteen days after the shooting, Durr orally informed the police that the shooter was a black, heavy-set man with light skin, a nappy wild hairstyle, Afro, a little facial hair, and a big nose.  (Tr. Feb. 19, 2003, at 106; Feb. 20, 2003, morning session, at 25.)  Five days later, Durr provided the police with a written statement in which he merely described the shooter as having facial hair.  (Tr. Feb. 19, 2003, at 106-08.) Seven days after the written statement (and a month after the shooting), Durr immediately

---

[3]  A use note to the standard jury instruction states that the bracketed portion of the instruction should be given, on request, when supported by the evidence.

identified Petitioner in a photographic lineup.  At trial, Durr stated that he saw part of the shooter's face and that the shooter had a "slight (sic) big nose," some facial hair, and very light skin.  He claimed that he did not see all of his head.  (Tr. Feb. 19, 2003, at 90-91.)  He explained the difference between his oral and written descriptions to the police by stating that he probably did not put enough information in the written statement.  (*Id*. at 109.)  Consistent factors in Durr's descriptions were facial hair, a large nose, and light skin tone.  Although Durr's descriptions of the shooter varied in the degree of detail, they did not contradict each other.

Even if the Court were to find that Durr's descriptions of Petitioner conflicted with each other, defense counsel elicited testimony regarding the differences in the descriptions.  Moreover, the trial court instructed the jury on mistaken identification, the credibility of witnesses, and the alibi defense.  The Court concludes that the jury instructions, when considered as a whole, *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), did not deprive Petitioner of his right to defend himself.

## IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims was not objectively unreasonable.  Accordingly, the application for a writ of habeas corpus is DENIED.

Dated:  July 30, 2007                                s/George Caram Steeh
                                                     GEORGE CARAM STEEH
                                                     UNITED STATES DISTRICT JUDGE

<div style="border:1px solid black">

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 30, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

</div>